## First National Bank v. W. Y. Sanford.

1. APPEALS—*Lie from the County Courts to Appellate Court in Applications for Release from Imprisonment.*—Appeals from the County Court in applications under the provisions of Chapter 72, R. S., to be released from the imprisonment imposed by a writ of *capias ad satisfaciendum* lie to the Appellate Court.

2. EXECUTIONS—*Against the Body as Part of a Proceeding at Law.*—The issuance of an execution against the body forms part of a proceeding at law, within the meaning of the legislative intent, in the use of that expression.

3. EVIDENCE—*Hearsay, Incompetent.*—In a proceeding to discharge a debtor from imprisonment, for refusing to surrender his estate upon the question of justifying payments of money to his wife, as money due her for her earnings as a boarding-house keeper, and for the care of his children by a former wife, testimony of an accounting had between himself and wife, by which it was ascertained there was a balance of about $2,100 due her, is incompetent.

4. MEASURE OF PROOF—*Where Fraud is Charged.*—In a proceeding in the County Court under the provision of Ch. 72, R. S., where the defendant is charged with having been guilty of fraud in refusing to surrender his estate on execution, it is sufficient to sustain such charge by a preponderance of the evidence.

Application for Discharge from Imprisonment.—Appeal from the County Court of Sangamon County; the Hon. CHARLES P. KANE, Judge, presiding. Heard in this court at the November term, 1898. Reversed and remanded. Opinion filed June 3, 1899.

ROBERT E. HAMILL and JAMES H. MATHENY, attorneys for appellant.

JAMES E. DOWLING and ROBERT H. PATTON, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

An execution against the body of appellee having been issued upon a judgment in favor of appellant, in the Circuit Court, for his alleged unjust refusal to surrender his estate for the payment of such judgment, and that since the debt for which judgment was rendered was contracted, he had fraudulently conveyed, concealed or otherwise disposed of some part of his estate, with a design to secure the same to his own use and defraud his creditors, the appellee applied to the County Court, under the provisions of Chapter 72, Revised Statutes, to be released from the imprisonment imposed by such writ. The question whether appellee was guilty of the fraud charged, and of his refusal to surrender his estate was tried by a jury and a verdict of not guilty returned, and after overruling appellant's motion for a new trial, the court gave judgment upon the verdict, discharging appellee from such imprisonment, and against appellant for costs, from which the latter has appealed to this court.

Appellee has moved this court to dismiss the appeal because, as counsel argue, the appeal should have been taken to the Circuit Court. If it shall be determined that a proceeding like this is a suit or proceeding at law or in chancery, within the meaning of section 8 of the Appellate Court act, then the appeal to this court was proper. Execution against the body, or *capias ad satisfaciendum*, as the process was usually called, is of ancient jurisdiction in the courts of common law, and while the issuance of such a writ may not be regarded as a suit at law, it can not well be doubted the process forms a part of a proceeding at law within the meaning of the legislative intent in the use of that expression. Blackstone defines proceeding to be the course of procedure in the prosecution of an action at law, and procedure is defined by Webster as the act or manner of proceeding or moving forward, progress, process, operation, conduct, a step taken, an act performed, a proceeding, the steps taken in an action or other legal proceeding. Therefore the commencement of the proceeding in question was a step taken in an action in a common law court, and process issued out of a suit at

law. It is true that the legislature has provided the remedy by which a defendant in such a proceeding may be discharged from the effect of such process, shall be administered by another jurisdiction, namely, the County Court, but the issue to be tried arises out of and upon the record of the court in which the judgment at law remains. If the statute creating the remedy directed the issue to be tried in the same case and court from which the process might be issued, it could not be well maintained such trial was not a proceeding at law. Does, then, the transfer of the jurisdiction to another court merely change the character of the proceeding and deprive it of its common law origin and nature? We think it unreasonable to so conclude. And this conclusion is not without authority for its support.

The case of Hunting v. Metzger, 158 Ill. 272, was a case like the one we are considering. The appeal was taken to the Appellate Court and from thence to the Supreme Court, and while in the report of the case nothing appears to have been said expressly upon the point here in question, still the history and record of the case show the point was before the court, and the remanding order of the Supreme Court, with its directions to the Appellate Court to enter such judgment, reversing or affirming the judgment of the County Court, as in their judgment might be proper, was in legal effect to sustain the jurisdiction of the appeal in the Appellate Court. The motion to dismiss the appeal herein will therefore be denied.

The errors chiefly urged upon our attention by counsel for appellant, for which a reversal of the judgment is sought, are that the court admitted improper evidence and gave improper instructions to the jury. In the view we have of the case it will not be necessary to refer to or discuss all of the various and numerous points made in the argument. It appears from the evidence that in March, 1893, appellee purchased a stock of furniture worth $6,800, of which he paid $4,000 and borrowed from appellant $1,100, which was also used in such purchase. Upon written statements and representations made by appellee of his financial

First National Bank v. Sanford.

standing and ability, in none of which was any reference made to any indebtedness due to his wife, the loan to him by appellant was renewed from time to time, until in January, 1897, when he sold to Griswold for $2,000 in cash, which he received. At the same time appellee drew from his bank account $128, which with the $2,000 received from Griswold he paid to his wife, less some minor amounts paid to others, as he claims. Appellant caused judgment to be taken upon its note, execution issued and demand was made upon appellee for payment or the surrender of his estate, and he failing in those respects, application was made to the judge of the Circuit Court for an execution against the body, which, having been ordered and issued, resulted in these proceedings. Upon the trial, to justify the payment of the money to his wife, appellee claimed she had at various times loaned him money earned by her as a boarding housekeeper, and that compensation was due her for the care of his children by a former wife. To sustain this claim the court, against the objection of appellant, permitted appellee and Mrs. Summergill to testify to an accounting had between himself and wife, by which it was ascertained there was a balance of about $2,100 due to Mrs. Sanford from appellee. The admission of this testimony violated the elementary rules governing the production of evidence. It proved nothing but the statements and admissions of Sanford and wife, which in that form was hearsay merely. While it is true the court ruled that Mrs. Summergill should testify to items of her own personal knowledge, yet it is plain from the evidence that a large part of the items computed by her to compose the $2,100, she had no knowledge of except the statement of Sanford and wife, and as to such matters she was clearly not qualified to testify. This infirmity was patent also by the nature of the questions asked, and the objections to them should have been sustained. The evidence upon this point was vital to the issue being tried, and it was prejudicial error to admit it.

In its instructions to the jury, at the request of appellee and of its own motion, by instructions requested by appel-

lant as modified, the court instructed the jury that unless they believed from all the evidence in the case, beyond a reasonable doubt, that appellee fraudulently conveyed or transferred his money or property to his wife for the purpose of securing the same to his own use, or of defrauding the First National Bank, then as to such conveyance or transfer of money or property to his wife the jury will find the defendant not guilty. We are asked to sustain these instructions under the authority of Crandall v. Dawson, 1 Gilm. 558; McConnell v. Delaware Ins. Co. 18 Ill. 229; Darling v. Banks, 14 Ill. 46; Crotty v. Morrissey, 40 Ill. 480; Harbison v. Shook, 41 Ill. 146; Corbley v. Wilson, 71 Ill. 213, and Germania Fire Ins. Co. v. Klewer, 129 Ill. 612. The result of these cases is to evolve the rule in civil cases that where the pleading charges the commission of a crime the party who makes such charge assumes the same strictness of proof as would be required to sustain a prosecution. It is conceded in Ins. Co. v. Klewer, *supra,* that the rule for which contention is made is one upon which the authorities are not in harmony. It seems to us that a rule requiring any greater degree of evidence than a mere preponderance upon any issue in a civil case, where only the private interests of the parties are in dispute, is exceptional and extreme, and we are not disposed to extend the rule further than we shall be compelled to under the decisions to which we have referred. In all the cases where the rule has been applied some infamous crime has been charged, such as perjury, larceny, arson and the like. In the case presented the evidence tends to prove only that appellee paid money to his wife with a design to secure the same to his own use and defraud his creditors. It may be well doubted, admitting the truth of the matter, if such act would be a violation of Section 122, Division 1, of the Criminal Code, or that it partakes of a criminal nature and it will not be contended the act would be attended with infamy according to the legal understanding of the word, or that it was felonious in any respect. If it is proper to apply the rule of reasonable doubt to the issue tried in this case, it would

follow that it should also be applied in all cases in chancery or at law where the question of a fraudulent disposition of property was in issue. No case has been cited to us where such an issue was made and the rule of reasonable doubt applied to it. We are unwilling to consent to applying such rule of the law in such cases unless compelled by authority. The case presented is a civil suit, devoid of a charge of infamous crime, and in our opinion appellant was required to establish the material issues in the case by a preponderance of the evidence only, and it was error to instruct the jury that any particular issue should be proved beyond a reasonable doubt.

For the errors indicated, the judgment of the County Court will be reversed and the cause remanded.